

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TODD MITCHELL, | § | |
| | | No. 08-13-00241-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | Criminal District Court No. 3 |
| THE STATE OF TEXAS, | § | |
| | | of Tarrant County, Texas |
| Appellee | § | |
| | | (TC# 1283395D) |
| | § | |

## **O P I N I O N**

Appellant Todd Mitchell was determined to be a sexually violent predator under Chapter 841 of the Texas Health and Safety Code. In 2006, the trial court entered a civil commitment order, imposing various requirements on Appellant in accordance with the provisions in the Code that were in effect at the time. In 2012, Appellant violated the terms of his civil commitment order. Appellant was prosecuted and convicted, as was permitted by the Code at the time, and sentenced to life imprisonment.

Appellant appealed his conviction. While his appeal was pending, the 84th Texas Legislature amended the relevant portions of the Health and Safety Code in two important ways. First, the Legislature decriminalized the conduct for which Appellant had been convicted. Second, the Legislature directed that this change in the law be applied retroactively to all offenses, except for offenses in which a "final conviction" existed on the effective date of the statute.

Because the amendment decriminalized the conduct for which Appellant had been convicted, and because Appellant's conviction was still pending on appeal when the amendment went into effect and was therefore not yet a "final conviction," we reverse Appellant's conviction and render judgment dismissing the indictment.[1]

**BACKGROUND**

The Legislature first enacted Chapter 841 of the Texas Health and Safety Code in 1999, finding that there was a "small but extremely dangerous group of sexually violent predators" who suffered from a "behavioral abnormality" that made them "likely to engage in repeated predatory acts of sexual violence." TEX. HEALTH & SAFETY CODE ANN. § 841.001 (West 2010). The Legislature determined that it was in the interest of the state to establish a "civil commitment procedure for the long-term supervision and treatment" of those deemed to be sexually violent predators. *Id.* At the time of its enactment, individuals committed into the civil commitment program were to be placed in an "outpatient treatment and supervision" program, and their commitment was to continue "until the person's behavioral abnormality has changed to the extent that the person is no longer likely to engage in a predatory act of sexual violence." Act of May 30, 1999, 76th Leg., R.S., ch. 1188, § 4.01, 1999 Tex. Gen. Laws 4122, 4147 (amended 2003, 2015) (current version at TEX. HEALTH & SAFETY CODE ANN. § 841.081) (West, Westlaw through 2015 R.Sess.).

In order to identify those individuals who might be in need of such supervision and treatment, the Code required a repeat sexually violent offender who was being released from prison to be assessed to determine if he suffered from a "behavioral abnormality" that would make

---

[1] This case was transferred from our sister court in Fort Worth, and we decide it in accordance with the precedent of that Court to the extent required by TEX. R. APP. P. 41.3.

2

him "likely to engage in a predatory act of sexual violence." Act of May 30, 1999, 76th Leg., R.S., ch. 1188, § 4.01, 1999 Tex. Gen. Laws 4122, 4146 (amended 2003, 2011, 2015) (current versions at TEX. HEALTH & SAFETY CODE ANN. § 841.023 (West, Westlaw through 2015 R.Sess.). If so identified, the State was given the authority to file a petition seeking to make the individual the subject of a "civil commitment," and the individual was then entitled to a jury trial on the issue of whether he was a sexually violent predator. Act of May 30, 1999, 76th Leg., R.S., ch. 1188, § 4.01, 1999 Tex. Gen. Laws 4122, 4146-47 (amended 2003, 2007, 2015) (current versions at TEX. HEALTH & SAFETY CODE ANN. §§ 841.041, 841.061) (West, Westlaw through 2015 R.Sess.).

Appellant, who had been convicted of five offenses involving sexual misconduct in 1993, was identified as a candidate for the civil commitment program upon his release from prison. Following a jury trial, Appellant was determined to be a sexually violent predator in need of supervision and treatment, and the trial court entered a final judgment and order of civil commitment dated November 29, 2006, committing Appellant into an "outpatient treatment and supervision" program, as was required by Section 841.081 of the Code as it existed at the time.[2] As was also required by Section 841.082 of the Code as it existed at the time, the trial court's commitment order imposed a series of requirements on Appellant directed at ensuring his "compliance with treatment and supervision and to protect the community." Act of May 23, 2005, 79th Leg., R.S., ch. 849, § 3, 2005 Tex. Gen. Laws 2890, 2891 (amended 2007, 2011, 2015) (current version at TEX. HEALTH & SAFETY CODE ANN. § 841.082(a)) (West, Westlaw through

---

[2] At the time, Section 841.081 provided that: "(a) If at a trial conducted under Subchapter D the judge or jury determines that the person is a sexually violent predator, the judge shall commit the person for outpatient treatment and supervision to be coordinated by the case manager [from the Council on Sex Offender Treatment]." Act of May 30, 2003, 78th Leg., R.S., ch. 347, § 23, 2003 Tex. Gen. Laws 1505, 1516 (amended 2015) (current version at TEX. HEALTH & SAFETY CODE ANN. § 841.081 (West, Westlaw through 2015 R.Sess.).

3

2015 R.Sess.)  In particular, in accordance with Section 841.082(a)(4) of the Code as it existed at the time, the commitment order required Appellant to "participate in and comply with a specific course of treatment, determined by the Council on Sex Offender Treatment," and to "follow written supervision requirements of the Council on Sex Offender Treatment and/or the case manager[.]"[3]

Prior to changes in the law made by the 84th Texas Legislature in 2015, Section 841.085 of the Code allowed the State to prosecute a committed person for violating *any* of the eight civil commitment requirements imposed under Section 841.082 of the Code.[4]  Appellant was first prosecuted in 2009 for violating the terms of his 2006 commitment order, which included his failure to follow the requirements imposed on him by his case manager.  Appellant was convicted of that offense and was sentenced to a three-year prison term.

Upon his release from prison in early September 2011, Appellant, who was still subject to the 2006 civil commitment order, re-entered an outpatient treatment program.[5]  A new treatment

---

[3] At the time, the Council on Sex Offender Treatment (the "Council") was responsible for providing appropriate and necessary treatment and supervision of sexually violent predators, but that duty was transferred to the Office of Violent Sex Offender Management (OVSOM) by amendments to the statute enacted in 2011.  *See* Act of May 30, 2003, 78th Leg., R.S., ch. 347, § 17, 2003 Tex. Gen. Laws 1505, 1515, amended by Act of May 23, 2011, 82nd Leg., R.S., ch. 1201, § 4, 2011 Tex. Gen. Laws 3197, 3199-3200 (current version at TEX. HEALTH & SAFETY CODE ANN. § 841.007 (West, Westlaw through 2015 R.Sess.).  The term "case manager" refers to a person employed or under contract to the relevant supervisory office to "perform duties related to outpatient treatment and supervision of a person committed under this chapter."  Act of May 30, 1999, 76th Leg., R.S., ch. 1188, § 4.01, 1999 Tex. Gen. Laws 4122, 4144 (amended 2003, 2005, 2007, 2011, 2015) (current version at TEX. HEALTH & SAFETY CODE ANN. § 841.002(3)) (West, Westlaw through 2015 R. Sess.).

[4] Prior to the 2015 changes to the Code, section 841.085(a) provided that: "A person commits an offense if, after having been adjudicated and civilly committed as a sexually violent predator under this chapter, the person violates a civil commitment requirement imposed under Section 841.082."  Act of Act of May 27, 2007, 80th Leg., R.S., ch. 1219, § 8, 2007 Tex. Gen. Laws 4109, 4110 (amended 2015) (current version at TEX. HEALTH & SAFETY CODE ANN. § 841.085) (West, Westlaw through 2015 R. Sess.)).

[5] In the interim, Appellant was the subject of two biennial reviews conducted in 2009 and 2011, as required by Section 841.102 of the Code, to determine whether he was no longer likely to engage in a predatory act of sexual violence, and was therefore ready to be successfully discharged from the civil commitment program.  Act of May 30, 1999, 76th Leg., R.S., ch. 1188, § 4.01, 1999 Tex. Gen. Laws 4122, 4149 (amended 2015) (current version at TEX. HEALTH &

plan was developed for Appellant at that time, and on September 7, 2011, Appellant executed a series of documents, together with members of his treatment team, in which he agreed to participate in the treatment program, agreed that he would follow the rules of the program, and acknowledged that he could be "discharged" from the program if he did not follow the rules of his civil commitment or his treatment program. In addition, Appellant acknowledged that it was up to his "treatment provider" to determine whether he was making sufficient progress in the program.

In April 2012, Appellant was discharged early and unsuccessfully from his treatment program upon a finding by his treatment providers that his overall participation in the program had been "poor," that he lacked "commitment to treatment," and that he was "unwilling to follow the rules of civil commitment[.]" On May 24, 2012, the State charged Appellant in a three-paragraph indictment, alleging that Appellant had intentionally and knowingly violated the terms of the trial court's 2006 civil commitment order, as well as the two substantially similar biennial review orders issued by the trial court in 2009 and 2011. In particular, the indictment alleged that Appellant had violated the requirements of his civil commitment by failing to participate in and comply with a specific course of treatment determined by the council on sex offender treatment and by failing to follow the written standard requirements of the treatment plan.[6]

A jury convicted Appellant of violating the trial court's prior civil commitment orders, as alleged in the indictment. After finding the habitual-offender allegations in the indictment to be

SAFETY CODE ANN. § 841.102) (West, Westlaw 2015 R. Sess.). The trial court determined in both instances that there was no evidence to suggest that Appellant was no longer likely to engage in acts of sexual violence, and the trial court therefore ordered Appellant to remain a committed person, and further directed that all requirements set forth in the original 2006 commitment order were to remain in "full force and effect."

[6] The indictment contained a second count, which was waived by the State prior to trial.

5

true,[7] the jury assessed Appellant's punishment as imprisonment for life. The trial court issued a judgment and sentence in accordance with the jury's verdicts. This appeal followed.

## DISCUSSION

While Appellant's conviction was pending on appeal, the 84th Texas Legislature made substantial changes to Chapter 841 of the Texas Health and Safety Code when it passed Texas Senate Bill 746, entitled: "An Act relating to the civil commitment of sexually violent predators; amending provisions subject to criminal penalties." The 2015 Act, which went into effect on June 17, 2015,[8] included an amendment to Section 841.085, the penal provision in the Code. Act of May 21, 2015, 84th Leg., R.S., ch. 845, § 19, 2015 Tex. Gen. Laws 2700, 2707 (current version at TEX. HEALTH & SAFETY CODE ANN. § 841.085) (West, Westlaw through 2015 R. Sess.). That amendment raised two concerns for this Court: whether the Legislature had decriminalized the conduct for which Appellant had been convicted, and whether the Legislature intended for the amendment to be applied retroactively to convictions that were pending on appeal on the effective date of the 2015 Act, which included Appellant's case.

We therefore ordered additional briefing on the 2015 Act's applicability to Appellant's case.[9] In its letter brief, the State agreed with Appellant that the amendments in the Act

---

[7] The indictment included a habitual-offender paragraph alleging that Appellant had previously been convicted of the felony offense of violating his civil commitment requirements in 2009, as well as the felony offense of possession of a controlled substance in 1993.

[8] Section 44 of the 2015 Act, as enrolled, contained a provision stating that the Act would be effective immediately if it received a "vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution." Act of May 21, 2015, 84th Leg., R.S., ch. 845, § 44, 2015 Tex. Gen. Laws 2700, 2712. A review of both the Senate and House Journals reveals that the bill passed unanimously in the Senate on May 21, 2015, and that it passed with more than a 2/3 majority in the House on May 18, 2015, with 137 votes in its favor, three opposed, and one Representative present but not voting. *See* S.J. of Tex., 84th Leg., R.S. 1815-17 (2015); H.J. of Tex., 84th Leg., R.S. 3687-89 (2015). The Senate Journal further reveals that the Governor signed the bill into law on June 17, 2015. *See* S.J. of Tex., 84th Leg., R.S. 3653 (2015).

[9] We note that we are vested with the authority to *sua sponte* review any error or issue in a case, including those not

6

decriminalized the conduct for which Appellant had been convicted and that the Legislature intended for the amendments to be applied retroactively to cases pending on appeal on the effective date of the Act. For the reasons set forth below, we also agree and therefore reverse Appellant's conviction.

**The Intent Behind the 2015 Amendments**

The Statement of Intent submitted by the Author/Sponsor of Texas Senate Bill 746 reveals that the 2015 Act was proposed due to a concern that there was a "growing crisis" relating to the civil commitment program, due, in part to "[h]orrible mismanagement" of the Office of Violent Sex Offender Management (OVSOM), which, at the time, was responsible for the supervision and treatment of committed individuals. *See* Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 746, 84th Leg., R.S. (2015). The Statement of Intent referred to a report from the State Auditor's Office, which indicated, among other things, that OVSOM did not adequately "plan for treatment services" and did not "monitor contractor performance." *Id*. The Statement of Intent raised a concern that the problems with the civil commitment program posed a "major threat to the public safety in Texas," and warned that the Legislature could seek to "fix these problems, wait until the federal courts step in, or abolish the program" altogether. *Id.*

The Legislature's concern that the problems facing the civil commitment program could result in the federal court intervention was not insignificant. In order to be deemed constitutional,

---

raised on appeal, once we obtain jurisdiction of a case by the filing of a timely and valid notice of appeal, as in the present case. *Pfeiffer v. State*, 363 S.W.3d 594, 599 (Tex.Crim.App. 2012) (a proper notice of appeal vests the appellate court with a "broad scope of review and revision over a criminal case" and gives the court authority to address any issue or claim pertinent to the judgment or order appealed from, even those not raised by the parties on appeal, unless otherwise restricted by statute) (citing *Carter v. State*, 656 S.W.2d 468, 469 (Tex.Crim.App. 1983)). When a reviewing court raises a "novel" point of error *sua sponte*, the court should first afford the parties an opportunity to brief the issue before rendering its decision. *Id*. at 599 n.16 (citing *Pena v. State,* 191 S.W.3d 133, 136–38 (Tex.Crim.App. 2006)); *see also* TEX.R.APP.P. 38.7 (a brief may be amended or supplemented whenever justice requires, on whatever reasonable terms the court may prescribe).

a civil commitment program must be rationally connected to providing supervision and treatment of committed individuals. If the program is instead deemed to be "punitive" in nature, the program faces constitutional challenges. A court may determine that an individual's civil commitment is more akin to imprisonment, thereby subjecting the individual to a second term of imprisonment for the same underlying conduct in violation of his double jeopardy rights. *See Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 2082, 138 L.Ed.2d 501 (1997) (rejecting appellant's argument that initiation of commitment proceedings constituted a second punishment in violation of his double jeopardy rights in light of the Court's finding that the Kansas civil commitment Act was civil in nature, and not punitive); *but see Karsjens v. Jesson*, CIV. 11-3659 DWF/JJK, 2015 WL 3755870, __F. Supp. 3d__ (D. Minn. June 17, 2015) (ruling portions of Minnesota's civil commitment program to be "punitive" in nature, and therefore unconstitutional, and describing the program as an "institutional failure" without proper safeguards to ensure that an offender will be discharged if properly rehabilitated).

The Texas Supreme Court has previously held that the Texas civil commitment program was created with these two valid goals in mind: (1) ensuring the supervision of potentially dangerous individuals; and (2) ensuring that those individuals receive adequate treatment. *See In re Commitment of Fisher,* 164 S.W.3d 637, 640-47 (Tex. 2005). The Court, however, did express concern with the penal provisions in the Code, which allow the State to prosecute a committed individual for violating the requirements of his civil commitment, thereby subjecting the individual to what the Court described as "severe criminal penalties." *Id*. at 652. The Court noted that this feature in our statutory scheme distinguished it from various other civil commitment programs around the country, including the Kansas program found to be

8

constitutional by the United States Supreme Court, and raised a concern that these penal provisions might tip the statute "into the punitive realm."   *Id.* at 652.   However, the Court concluded that the penal provisions did not render the statute punitive in nature, after weighing the possibility of a criminal prosecution against the fact that the Texas civil commitment program, at the time, only called for "outpatient" supervision and treatment of committed individuals.   Noting that this feature appeared to be unique to Texas, as other states typically place committed individuals into more restrictive inpatient treatment programs, the Court concluded that, on balance, the "freedom" experienced by committed individuals in Texas outweighed this more punitive aspect of Texas' civil commitment scheme.   *Id*. at 652-53.   After determining the civil commitment program was "rationally connected" to the non-punitive purposes of supervision and treatment of committed individuals, the Court ultimately upheld the program as being "civil" in nature and therefore constitutional.   *Id.* at 656.

## The 2015 Amendments to the Code

In an apparent effort to ensure the continued constitutionality of the Texas civil commitment program, i.e., to ensure that it was "rationally connected" to the supervision and treatment of committed individual, the 2015 Act made various changes to the program affecting how committed individuals in the program were to be supervised and treated.   These changes included transferring the responsibility for supervision and treatment from the highly-criticized OVSOM to a newly-created agency, the Texas Civil Commitment Office, and taking away much of the responsibility for treatment and supervision from the individual caseworkers and giving it to the Office itself.[10]   Act of May 21, 2015, 84th Leg., R.S., ch. 845, §§ 1, 3, 12, 15, 2015 Tex. Gen.

---

[10] We note that the 2015 Act also eliminates the requirement that a committed individual be placed into an "outpatient" treatment program, and instead creates a tiered program allowing a committed individual to be placed in

9

Laws 2700, 2701, 2704-2705 (current versions at TEX. HEALTH & SAFETY CODE ANN. §§ 841.002(4); 841.007; 841.081; 841.083) (West, Westlaw through 2015 R. Sess.).

The 2015 Act also made changes to the Code that eliminated three of the eight requirements that a trial court was previously mandated to include in a civil commitment order to ensure a committed individual's compliance with "treatment and supervision and to protect the community." In particular, Section 841.082 was revised as follows:

> SECTION 13. Sections 841.082(a) and (b), Health and Safety Code, are amended to read as follows:
>
> (a) Before entering an order directing a person's [outpatient] civil commitment, the judge shall impose on the person requirements necessary to ensure the person's compliance with treatment and supervision and to protect the community. The requirements shall include:
>
> (1) requiring the person to reside where instructed [in a Texas residential facility under contract with the office or at another location or facility approved] by the office;
>
> (2) prohibiting the person's contact with a victim [or potential victim] of the person;
>
> (3) [prohibiting the person's possession or use of alcohol, inhalants, or a controlled substance;
>
> [(4)] requiring the person's participation in and compliance with the sex

---

a "total confinement facility," with the possibility that an individual could later be transitioned to "less restrictive housing and supervision" and eventually released entirely "based on [his] behavior and progress in treatment." Act of May 21, 2015, 84th Leg. R.S., ch. 845, §§ (1) (12); (13); (15); (16), 2015 Tex. Gen. Laws 2700-2701, 2704-2706 (current versions at TEX. HEALTH & SAFETY CODE ANN. §§ 841.002; 841.081; 841.082; 841.083; 841.0831 to 841.0836) (West, Westlaw, 2015 R. Sess.). As set forth above, the Court in *Fisher* found that the civil commitment program in Texas was non-punitive in nature, despite the penal provisions contained in the Code, based, in part, on the fact that the statutory scheme at the time called solely for outpatient treatment of committed persons, thereby rendering the program "less restrictive" than other state's civil commitment programs. *Fisher*, 164 S.W.3d at 652-53. We express no opinion whether the changes to the statutory scheme allowing for placement of a committed individual into a "total confinement facility" may "tip the statute into the punitive realm." *See Richards v. Office of Violent Sex Offender Mgmt.*, CIV.A. H-13-1394, 2014 WL 1158993, at *4 (S.D. Tex. Mar. 21, 2014) (not designated for publication) (Noting that although the Texas Supreme Court in *Fisher* stated that "freedom from confinement" outweighed the potential criminal sanctions for failure to obey the commitment conditions imposed by the Code, the Court did not view this as the sole factor in determining the statute's constitutionality).

offender treatment program [a specific course of treatment] provided by the office and compliance with all written requirements imposed by the [case manager or otherwise by the] office;

(4) [(5)] requiring the person to:

(A) submit to tracking under a particular type of tracking service and to any other appropriate supervision; and

(B) refrain from tampering with, altering, modifying, obstructing, or manipulating the tracking equipment; and

(5) [(6)] prohibiting the person from [changing the person's residence without prior authorization from the judge and from] leaving the state without [that] prior authorization from the office[;

[(7) if determined appropriate by the judge, establishing a child safety zone in the same manner as a child safety zone is established by a judge under Section 13B, Article 42.12, Code of Criminal Procedure, and requiring the person to comply with requirements related to the safety zone; and

[(8) any other requirements determined necessary by the judge].

Act of May 21, 2015, 84th Leg., R.S., ch. 845, § 13, 2015 Tex. Gen. Laws 2700, 2704-2705 (current version at TEX. HEALTH & SAFETY CODE ANN. § 841.082) (West, Westlaw through 2015 R. Sess.).

Important to this case, the revision eliminated the existing provisions in subsection (a)(3). This resulted in subsection (a)(4), which requires the person's participation in and compliance with the treatment program, being moved up and renumbered as the new subsection (a)(3).

In addition, the Legislature also amended the penal provision in the Code, as found in Section 841.085, to allow prosecution for only four of the remaining five requirements that must be placed in a civil commitment order pursuant to the revisions to Section 841.082 of the Code. In particular, Section 841.085 was revised as follows:

SECTION 19. Section 841.085(a), Health and Safety Code, is amended to read

11

as follows:

> (a) A person commits an offense if, after having been adjudicated and civilly committed as a sexually violent predator under this chapter, the person violates a civil commitment requirement imposed under Section 841.082(a)(1), (2), (4), or (5) [841.082].

Act of May 21, 2015, 84th Leg., R.S., ch. 845, § 19, 2015 Tex. Gen. Laws 2700, 2707 (current version at TEX. HEALTH & SAFETY CODE ANN. § 841.085) (West, Westlaw through 2015 R. Sess.).

As is readily apparent from the plain language of this particular amendment, Section 841.085 no longer allows the State to prosecute a committed individual for violating a requirement imposed under Section 841.082(a)(3) of the Code. In turn, due to the renumbering of Section 841.082, the current version of Section 841.082(a)(3) of the Code is the requirement that a committed individual follow the requirements of his treatment plan, the very conduct for which Appellant was prosecuted and convicted. Because Section 841.085 of the Code no longer allows the State to prosecute an individual for a violation of the requirement that a person participate in and comply with his treatment program, the plain language of the statute effectively decriminalizes the conduct for which Appellant was convicted.

**Whether the Legislature Intended to Eliminate Prosecutions of this Nature**

Before addressing whether the amendments to Section 841.085 should be retroactively applied to Appellant's case, it is necessary to address a question regarding the Legislature's intent in amending Section 841.085, in light of language contained in the Senate Research Center's Bill Analysis analyzing the Introduced Version of Senate Bill 746. Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 746, 84th Leg., R.S. (2015). In particular, the Center's analysis of the amendment to Section 841.085(a) states as follows:

> [*A] person commits an offense if, after having been adjudicated and civilly*

12

*committed as a sexually violent predator under this chapter, the person violates a civil commitment requirement imposed under Section 841.082(a)*(1) (requiring a person who will begin an outpatient civil commitment to reside in a Texas residential facility under contract with the office or at another location or facility approved by the office), (2) (prohibiting a person who will begin an outpatient civil commitment from contacting a victim or potential victim of the person), *(4) (requiring the participation in and compliance with a specific course of treatment provided by the office and compliance with all written requirements imposed by the case manager or otherwise by the office by a person who will begin an outpatient civil commitment),* or (5) (requiring a person who will begin an outpatient civil commitment to submit to tracking under a particular type of tracking service and to any other appropriate supervision, and refrain from tampering with, altering, modifying, obstructing, or manipulating with tracking equipment), rather than under Section 841.082.[11]   Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 746, 84th Leg., R.S. (2015).   **[Emphasis added].**

The Bill Analysis appears to indicate that it would still be a criminal offense for a committed individual to violate the requirements of his treatment plan.   However, the Analysis refers to the treatment program requirements as being included in Section 841.082(a)(4) of the Code, when, in fact, that subsection was changed to Section 841.082(a)(3) pursuant to the 2015 amendments. This raises the question whether the reference to subsection (a)(4), rather than subsection (a)(3) in the amendment to Section 841.085(a) as it was passed, was due to a numbering mistake made by the Senate Research Center and whether the true intent of the 2015 Act was to continue to make a violation of the treatment program requirements a criminal offense.

Although the Senate Bill Analysis raises the possibility that there was a potential mistake in the numbering contained in the amendment to Section 841.085, our focus must nevertheless be on the language that the Legislature actually voted on when it adopted the 2015 Act.   As the Texas Supreme Court has recognized, when the Legislature has used clear and unambiguous language in a statute, the "voted-on" language is what constitutes the law.   *Combs v. Roark*

---

[11] The Center similarly analyzed this section of the Bill in its substituted Bill Analysis dated April 17, 2015. Senate Comm. on Criminal Justice, Bill Analysis (substituted), Tex. S.B. 746, 84th Leg., R.S. (2015).

*Amusement & Vending, L.P.,* 422 S.W.3d 632, 635 (Tex. 2013); *see also Texas Student Hous. Auth. v. Brazos County Appraisal Dist.,* 460 S.W.3d 137, 141 (Tex. 2015) (the "truest manifestation of what lawmakers intended is what they enacted") (citing *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 651 (Tex. 2006)); *Presidio Indep. Sch. Dist. v. Scott,* 309 S.W.3d 927, 930 (Tex. 2010) (we take statutes as we find them, presuming that the Legislature included words that it intended to include and omitted words it intended to omit); *Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 52 (Tex. 2014) (in construing a statute our primary objective is to ascertain the Legislature's intent, and we do that, if possible, through the words the Legislature selected).

Therefore, even when it appears theoretically possible that the Legislature may have made a mistake when it selected certain language in a statute, courts are not empowered to "fix" any such mistakes by disregarding direct and clear statutory language, as long as doing so does not create an absurd result. *See Jaster v. Comet II Const., Inc.,* 438 S.W.3d 556, 571 (Tex. 2014) (plurality) (citing *Texas Lottery Com'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 638 (Tex. 2010)); *see also Brown v. De La Cruz*, 156 S.W.3d 560, 565 (Tex. 2004)). Accordingly, when the Legislature has enacted a statute using "clear and unambiguous" language, we must give effect to the statute's plain meaning unless that meaning would lead to absurd consequences that the Legislature could not have intended*. Texas Lottery Com'n*, 325 S.W.3d at 635 (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008)); *see also William Marsh Rice Univ. v. Refaey,* 459 S.W.3d 590, 593 (Tex. 2015) (we give undefined words "'their common, ordinary meaning unless the statute clearly indicates a different result'") (quoting *Jaster,* 438 S.W.3d at 563); *In re Lipsky,* 411 S.W.3d 530, 540 (Tex.App. – Fort Worth 2013, orig.

proceeding), *mand. denied*, 460 S.W.3d 579 (Tex. 2015) (we rely on the plain meaning of a statute unless that meaning would lead to absurd results).

We conclude that in enacting the 2015 amendment to Section 841.085, as it was voted on and as it was enrolled into law, the Legislature used "clear and unambiguous" language to the effect that a violation of the treatment program requirements found in Section 841.082(3) of the Code, as it was renumbered by the 2015 Act, is no longer a criminal offense.  Therefore, regardless of any discrepancies found in the Senate Bill Analysis on this issue, we conclude that this is a true and fair interpretation of the law as written.  Further, we note that The House Committee Report Bill Analysis recognizes that the 2015 Act, as written, did in fact exclude from prosecution a committed person's violation of the requirements of his treatment program, by stating as follows:  "The bill excludes the civil commitment requirement requiring the person's participation in and compliance with the sex offender treatment program provided by the office and compliance with all written requirements imposed by the office from the civil commitment requirements the violation of which constitutes an offense."  House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. S.B. 746, 84th Leg., R.S. (2015).

In addition, we do not believe it creates an "absurd result" to interpret the 2015 amendments to Section 841.085 in this manner.  As set forth above, the 2015 Act's Statement of Intent indicates that the Act was directed at addressing the systemic problems believed to exist in the administration of the civil commitment's treatment and supervision programs.  In light of the concern that the State's civil commitment program was not being adequately administered, we cannot label as "absurd" the Legislature's apparent determination that it was no longer appropriate to criminalize a committed individual's conduct for violating the requirements

15

imposed on him by the agency responsible for administering his treatment program. We also do not find it absurd that the Legislature intended to decriminalize such conduct in light of the Texas Supreme Court's concern in *Fisher* that the penal provisions contained in the civil commitment statute could be viewed as punitive in nature. By eliminating the nexus between a committed individual's participation in a treatment program and the possibility of a criminal prosecution for his failure to adequately participate in a treatment program, the amendments in the 2015 Act clearly diminish the more "punitive" aspects of the civil commitment statute, and help shift the focus of the statute to the legitimate, non-punitive goals of treating and rehabilitating sexually violent predators.

Having found that this interpretation of the 2015 Act does not lead to an "absurd result," we conclude that the plain language of the amendment to Section 841.085 of the Code decriminalized the conduct for which Appellant was convicted. We now turn to the question of whether the amendment applies retroactively to Appellant's case.

**Whether the Changes in the Law Apply Retroactively to Appellant's Case**

In the 2015 Act, the Legislature included a "savings provision," which expressly described the cases to which the amendment to Section 841.085 must be applied. And, that savings provision states that the amendment to Section 841.085 is to be applied retroactively to all offenses except offenses subject to a "final conviction" that exists on the effective date of the Act. In particular, Section 41 of the 2015 Act, as enrolled, states that:

> The change in law made by this Act in amending Section 841.085, Health and Safety Code, applies to an offense committed before, on, or after the effective date of this Act, except that a final conviction for an offense under that section that exists on the effective date of this Act remains unaffected by this Act.

Act of May 21, 2015, 84th Leg., R.S., ch. 845, § 41, 2015 Tex. Gen. Laws 2700, 2711. The

16

Legislature, however, did not define what it meant by "final conviction," and the Health and Safety Code itself provides no indication whether the term refers to a conviction entered by a trial court, or whether it refers to a conviction that has reached finality through the appellate process.

The 2015 Act went into effect on June 17, 2015, *after* Appellant had been convicted for his conduct in the trial court, but *before* his appeal from his conviction was finally resolved by this Court. Therefore, if we construe the Act to mean that a "final conviction" is one entered by the trial court, the amendment will have no effect on Appellant's case. However, if we construe the Act to mean that a "final conviction" is one that has achieved finality through the appellate process, then the amendment will apply retroactively to Appellant's case, thereby resulting in a reversal of his conviction.

In construing a statute, our primary objective is to give effect to the Legislature's intent by looking to the plain meaning of the words used in a statute. *See Albertson's, Inc. v. Sinclair,* 984 S.W.2d 958, 960 (Tex. 1999); *Monsanto Co. v. Cornerstones Mun. Util. Dist.,* 865 S.W.2d 937, 939 (Tex. 1993). However, when the plain language of a statute does not convey the Legislature's apparent intent, we may resort to construction aids in determining that intent. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867-68 (Tex. 2009) (citing *Hughes,* 246 S.W.3d at 626). The primary aid used by courts in construing statutes is the Code Construction Act, found in Chapter 311 of the Texas Government Code, which allows a court to construe a statute by looking to the objective of the law, the legislative history, the common law, or former statutory provisions, including laws on the same or similar subject, and the consequences of a particular construction.[12]  *Id.* (citing TEX. GOV'T CODE ANN. § 311.023); *see also Hirsch v.*

---

[12] Section 311.023 of the Texas Government Code provides that:  "In construing a statute, … a court may consider among other matters the:   (1) object sought to be attained; (2) circumstances under which the statute was enacted; (3)

17

*State,* 282 S.W.3d 196, 203 (Tex.App. – Fort Worth 2009, no pet.) (applying the Code Construction Act in construing a legislative amendment).

Further, in accordance with Section 311.011 of the Texas Government Code, when determining the meaning of an undefined term used in a statute, a court should first look to "definitions prescribed by the Legislature and any technical or particular meaning the words have acquired" in accordance with the construction, and if no such meaning is apparent, then to "their plain and common meaning[.]"[13] *Hughes*, 246 S.W.3d at 625-26; *see also Greater Houston P'ship v. Paxton,* __ S.W.3d ___, No. 13-0745, 2015 WL 3978138, at *5 (Tex. June 26, 2015) ("Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning.").

Thus, in order to discern the Legislature's intent in using an undefined term in a statute, a court may look to, among other things, prior court opinions construing the term in other contexts. *See, e.g., Jaster,* 438 S.W.3d at 563 (to determine the meaning of an undefined term used in a statute, courts look to a "wide variety of sources, including … our own prior constructions of the word in other contexts[.]"). Further, a court may presume that the Legislature was aware of relevant prior case law when it enacts a statute. *Beeman v. Livingston,* __ S.W.3d __, No. 13-0867, 2015 WL 4072404, at *5 (Tex. June 26, 2015) (citing *In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012)); *see also Miller v. State,* 33 S.W.3d 257, 260 (Tex.Crim.App. 2000) (court presumed

---

legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; [and] (5) consequences of a particular construction . . . ." TEX. GOV'T CODE ANN. § 311.023 (West 2013).

[13] Section 311.011 of the Texas Government Code provides that, "(a) Words and phrases shall be read in context and construed according to the rules of grammar and common usage [and] (b) Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." TEX. GOV'T CODE ANN. § 311.011 (West 2013).

that the Legislature was aware of both how courts have been interpreting prior version of a statute and of the Court's prior opinions when it enacted current version of that statute); *Grunsfeld v. State,* 843 S.W.2d 521, 523 (Tex.Crim.App. 1992) (when examining amendments to existing legislation, it is presumed that the Legislature was aware of case law affecting or relating to the statute).

## Defining the Term "Final Conviction"

With these construction aids in mind, we first look to how the term "final conviction" has been defined in the past by the courts. In a recent opinion, the Texas Court of Criminal Appeals noted that it has addressed when a conviction becomes "final" in a number of lines of cases, and has "repeatedly held that a judgment of conviction is not final while the conviction is on appeal."[14] *Lundgren v. State*, 434 S.W.3d 594, 598 (Tex.Crim.App. 2014). As the Court in *Lundgren* explained, a conviction may only be considered "final" once all appellate remedies are exhausted due to the "possibility that the trial court's judgment 'could be retroactively vitiated by the mere filing of a ... notice of appeal.'" *Id*. (quoting *Milburn v. State*, 201 S.W.3d 749, 753-54 (Tex.Crim.App. 2006)); *see also Jones v. State,* 711 S.W.2d 634, 636 (Tex.Crim.App. 1986) (the law is settled that a conviction from which an appeal has been taken is not considered to be a final conviction until the conviction is affirmed by the appellate court and that court's mandate of affirmance becomes final); *Russell v. State,* 790 S.W.2d 655, 657 (Tex.Crim.App. 1990) (same).

---

[14] The Court in *Lundgren* cited the following cases for this proposition: *Milburn v. State,* 201 S.W.3d 749, 750 (Tex.Crim.App. 2006) (whether previous felony conviction was final such that the appellant was not entitled to an instruction on community supervision for a subsequent offense); *Jones v. State,* 711 S.W.2d 634, 636 (Tex.Crim.App. 1986) (whether a previous conviction is final such that it can be used to enhance a subsequent offense); *Delorme v. State,* 488 S.W.2d 808, 810 (Tex.Crim.App. 1973) (holding that, when an appeal is taken, the terms of community supervision do not commence until the appellate mandate has issued and the judgment is final); *McConathy v. State,* 544 S.W.2d 666, 668 (Tex.Crim.App. 1976) (holding that, if no notice of appeal is filed, the terms of community supervision commence when a motion for new trial is overruled and the trial-court judgment becomes final). *Lundgren,* 434 S.W.3d at 598 n.4.

As the Court in *Lundgren* noted, the rule that an appeal effectively suspends the finality of a judgment of conviction has been applied by our state courts in at least two contexts. First, courts have held that an appeal of a judgment of conviction stays the commencement of a community-supervision term "until appellate mandate has issued affirming the judgment of conviction." 434 S.W.3d at 598. Second, courts have held that convictions that are pending on appeal are not considered final for purposes of utilizing the conviction to enhance a subsequent conviction received by a defendant. *Id*. at 598 n.4; *see also Carter v. State*, 510 S.W.2d 323, 324 (Tex.Crim.App. 1974) (it is "axiomatic" that when an appeal has been taken from a judgment of conviction in the trial court, that conviction does not become final until the trial court judgment has been affirmed by the appellate court, and therefore a prior conviction may not be relied on for enhancement purposes in a subsequent case until the appellate process has ended).

Further, in applying the "Teague doctrine," the United States Supreme Court has adopted a similar definition of the term "final conviction." *Beard v. Banks,* 542 U.S. 406, 411, 124 S.Ct. 2504, 2510, 159 L.Ed.2d 494 (2004). The Teague Doctrine provides that, on collateral review, a court will apply a "new" constitutional rule retroactively to a defendant's case only if it determines that the "legal landscape" at the time the defendant's conviction became "final" would have compelled a court to apply that rule to the defendant's case. The Supreme Court has held that for purposes of applying this doctrine, it follows the generally accepted rule that, "State convictions are final 'for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.'" *Id*. (quoting *Caspari v. Bohlen*, 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994)); *see also Gutierrez v. Dretke,* 392 F.Supp.2d 802, 829-30

20

(W.D.Tex. 2005) (defendant's conviction became final for purposes of applying the Teague Doctrine 91 days after the Texas Court of Criminal Appeals issued its opinion, which was the date on which the defendant's deadline for filing a petition for writ of certiorari with the Unites States Supreme Court expired).

We must presume that when the Legislature chose to use the term "final conviction" in the savings provision in the 2015 Act, it was aware of this long line of cases in which both state and federal courts have repeatedly and consistently held that a conviction is not "final" when it is pending on appeal. As the United States Supreme Court recognized in *Sekhar v. United States*, when a legislative body "borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." 133 S.Ct. 2720, 2724, 186 L.Ed.2d 794 (2013) (citing *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952)).

Further, our assumption that the Legislature was aware of this common law definition of "final conviction" is strengthened by the fact that in other savings provisions utilized in the past, the Legislature has expressly drawn a distinction between judgments of conviction entered by trial courts, and judgments of conviction that are considered "final." In several prior instances, the Legislature has utilized the following language in various savings provisions in amendments to the Penal Code that have decriminalized conduct:

> Conduct constituting an offense under existing law that is repealed by this Act and that does not constitute an offense under this Act may not be prosecuted after the effective date of this Act. If, on the effective date of this Act, a criminal action is pending for conduct that was an offense under the laws repealed by this Act and

21

that does not constitute an offense under this Act, the action is dismissed on the effective date of this Act. However, a conviction existing on the effective date of this Act for conduct constituting an offense under laws repealed by this Act is valid and unaffected by this Act. *For purposes of this section, "conviction" means a finding of guilt in a court of competent jurisdiction, and it is of no consequence that the conviction is not final.*[15]   [Emphasis added].

The Legislature would not have found it necessary to make this distinction in these other savings provisions, if it did not recognize that the mere entry of a conviction by the trial court does not render a judgment "final."   *See generally Texas Lottery Com'n,* 325 S.W.3d at 635 (we presume that the Legislature selected each word in a statute with a purpose in mind).

Moreover, we believe that the Legislature's past use of this clarifying language indicates that it was well aware of how to express itself when it did not want an amendment to be applied retroactively to convictions pending on appeal.   It would have been an easy task for the Legislature to have specified that the amendment to the penal provision in the 2015 Act was to be applied retroactively only to cases in which no judgment of conviction had yet been entered by a trial court, as opposed to cases in which a conviction was still pending on appeal.   Its failure to do so confirms our belief that this was not the Legislature's intent.   *See generally Beeman,* 2015 WL 4072404, at *4 (if the Legislature had intended to include prisons as facilities that are open to the public in the statute, it clearly knew how to do so, but by its plain language, chose not to) (citing *Lippincott v. Whisenhunt,* 462 S.W.3d 507, 509 (Tex. 2015) (if the Legislature had intended to limit the scope of the Texas Citizens Participation Act to publicly communicated speech, it could have easily added language to that effect, but, by the plain language of the statute, it chose not to));

---

[15] This language was used by the Legislature in its revisions to Article 1183 of the former Penal Code provisions relating to the offense of "statutory rape."   *See Wright v. State*, 527 S.W.2d 859, 864 (Tex.Crim.App. 1975).   Similar language was used by the Legislature when amending the Penal Code in felony theft cases, *O'Hern v. State,* 527 S.W.2d 568, 570 (Tex.Crim.App. 1975), in shoplifting cases, *Ragon v. State*, 506 S.W.2d 214, 215 (Tex.Crim.App. 1974),   and in aggravated assault cases, *Moore v. State*, 530 S.W.2d 314, 315 (Tex.Crim.App. 1975).

*see also In re Lipsky,* 411 S.W.3d at 540 (court noted that if the Legislature had meant to require a trial court to "hold," rather than merely "set," a hearing within 30 days on a particular motion, it "knew how to say so," as it had done in other previously-enacted statutes).

In light of the above, we conclude that the Legislature intended that the amendment to the penal provision, as set forth in the current version of Section 841.085 of the Texas Health and Safety Code, be applied retroactively to convictions pending on appeal at the time the amendment went into effect. Because Appellant's conviction was pending on appeal when the amendment went into effect, we have no choice but to reverse Appellant's conviction and render judgment dismissing the indictment.

## CONCLUSION

We reverse the trial court's judgment and render judgment dismissing the indictment against Appellant.[16]

STEVEN L. HUGHES, Justice

August 31, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Publish)

---

[16] We assume the trial court will act forthwith to re-implement Appellant's existing civil commitment order or to modify that order to comply with the requirements as set forth in the 2015 Act to the extent it deems necessary.

23