COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ENRIQUE MARTINEZ, | § | No. 08-12-00320-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | 41st District Court |
| THE STATE OF TEXAS, | § | |
| | § | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20120D02642) |

## **O P I N I O N**

In 2005, Appellant Enrique Martinez was determined to be a sexually violent predator pursuant to Chapter 841 of the Texas Health and Safety Code, and was thereafter made the subject of a civil commitment order that included various supervision requirements mandated by the Code at the time. In 2012, Appellant was found guilty of violating two of his supervision requirements. Appellant appealed his conviction. While his appeal was pending, the Legislature amended the relevant portions of the Code and decriminalized the conduct for which Appellant had been convicted. The Legislature included a savings provision in the amending act directing that the amendments be applied retroactively to all offenses, except for offenses in which a "final conviction" existed on the effective date of the amendments.

In *Mitchell v. State,* 473 S.W.3d 503, 517 (Tex.App. – El Paso 2015, no pet.), this Court

concluded the Legislature's use of the term "final conviction" in the savings provision demonstrated the Legislature intended the amendments to apply retroactively to all cases still pending on appeal at the time the amendments went into effect. Because Mitchell's conviction was pending on appeal when the amendments went into effect, we reversed his conviction and rendered judgment dismissing the indictment. *Id*.

Shortly after we decided *Mitchell*, the Beaumont Court of Appeals reviewed a similar case and agreed with our holdings in *Mitchell*. *Vandyke v. State,* 485 S.W.3d 507, 510 (Tex.App. – Beaumont 2016, pet. granted). However, the Court in *Vandyke* was faced with an issue not raised in *Mitchell*—whether the Legislature "improperly assumed the executive branch's clemency power" in directing that the amendments be applied retroactively to cases that had already resulted in a conviction in the trial court. *Id.* The Beaumont Court concluded that by retroactively applying the amendments to cases on appeal, the Legislature had "essentially pardoned these individuals" and thereby "usurped the Governor's clemency power" in violation of the separation of powers provision in the Texas Constitution. *Id.* at 511.

In the present case, both the State and Appellant agree with *Mitchell*, and that the amendments to the Code did in fact decriminalize the conduct for which Appellant was convicted and that the Legislature intended the amendments to apply retroactively to this case because it was pending on appeal at the time of the amendments. The parties disagree, however, on whether the Legislature violated the separation of powers provision in doing so. We conclude that the Legislature did not violate the separation of powers provision, and that it acted within its constitutional powers in directing that the amendments be applied retroactively to cases pending on appeal. We therefore reverse Appellant's conviction and render judgment dismissing the

2

indictment.

## BACKGROUND

In 2005, a trial court signed a final judgment adjudicating Appellant to be a sexually violent predator in accordance with Chapter 841 of the Texas Health and Safety Code, and entered an order of civil commitment.[1] The judgment and civil commitment order imposed certain requirements on Appellant in accordance with Section 841.082 of the Texas Health and Safety Code as it existed at that time, which were calculated to ensure his "compliance with treatment and supervision and to protect the community." *See Mitchell,* 473 S.W.3d at 505-06. The order generally required Appellant to follow the written supervision requirements "of the Council on Sex Offender Treatment and/or the case manager," to abide by the rules, regulations, and policies of the community residential facility in which he was housed, and to commit no offenses against the laws of the State of Texas.[2] The rules at the residential facility where Appellant was housed provided that residents were not allowed to take items from the community kitchen to their dormitory rooms and were not allowed to have pills in their possession without the written permission of a nurse.

In 2012, Appellant was indicted for violating his supervision requirements by: (1) possessing prohibited items in his locker, including a Kool-Aid packet that was property of the

---

[1] When Appellant was initially committed, Section 841.081 of the Health and Safety Code provided that: "(a) If at a trial conducted under Subchapter D the judge or jury determines that the person is a sexually violent predator, the judge shall commit the person for outpatient treatment and supervision to be coordinated by the case manager [from the Council on Sex Offender Treatment]." *See Mitchell*, 473 S.W.3d at 505 n.2.

[2] At the time, the Council on Sex Offender Treatment was responsible for providing for the treatment and supervision of sexually violent predators. *See Mitchell*, 473 S.W.3d at 506 n.3. Operation of the treatment program was transferred from the Council to the Office of Violent Sex Offender Management (OVSOM) by amendments to the Health and Safety Code in 2011. *Id.* The term "case manager" referred to a person employed or under contract to the relevant office to "perform duties related to outpatient treatment and supervision of a person committed[.]" *Id.*

3

facility and certain unidentified pills without a nurse's authorization; and (2) committing the criminal offenses of retaliation against a witness, tampering with a witness, and obstruction of justice involving another resident at the facility.[3] Following a bench trial, Appellant was convicted of both counts and was sentenced to two 25-year prison terms to run concurrently. This appeal followed.[4]

## DISCUSSION

As we recognized in *Mitchell*, the Texas Legislature made significant changes to Chapter 841 of the Texas Health and Safety Code in 2015 when it passed Texas Senate Bill 746. 473 S.W.3d at 509-11. The Act included amendments to Section 841.085 of the Code, which, among other things, decriminalized the conduct that was the subject of Appellant's conviction, by eliminating the penal provision in the Code making it an offense for a committed individual, such as Appellant, to fail to follow his civil commitment requirements. *Id.* at 511. We further recognized in *Mitchell* that the Legislature included a savings provision in the Act, providing that the amendments were to be applied to all offenses "committed before, on, or after the effective date of this Act," with the exception of cases in which a "final conviction" existed on the effective date of the Act. *Id.* at 513-17. Looking to various authorities that uniformly interpreted "final conviction" to mean those cases that had achieved finality through the completion of the appellate

---

[3] Appellant was also charged with two additional counts of violating his civil commitment requirements, but the trial court dismissed one count prior to trial and dismissed the second when it granted Appellant's motion for directed verdict.

[4] Appellant initially raised issues regarding the sufficiency of the evidence and whether the penal code provision in Chapter 841 applied due to the nature of the facility in which he was housed. We need not address these issues in light of our decision that the offenses for which Appellant was convicted are no longer a crime. After the Legislature amended Chapter 841 in 2015 and after we issued our decision in *Mitchell*, we requested the parties to file letter briefs addressing the impact of the amendments and the application of *Mitchell*. We are vested with the authority to sua sponte review any error in a case, including those not raised on appeal, once we obtain jurisdiction over a case. *Mitchell,* 473 S.W.3d at 508 n.9. When a reviewing court raises a point of error sua sponte, the court should first afford the parties an opportunity to brief the issue before rendering its decision. *Id.*; *see also* TEX. R. APP. P. 38.7 (allowing a brief to be supplemented whenever justice requires).

4

process, we concluded the Legislature intended the amendments to apply retroactively to cases that were still pending on appeal as of the effective date of the amendments. *Id.* at 515-17. Because Mitchell's case was still pending on appeal as of the effective date of the amendments, we reversed Mitchell's conviction in accordance with the Legislature's intent, and entered a judgment dismissing the indictment. *Id.* at 517.

Shortly after we decided *Mitchell*, the Beaumont Court of Appeals reviewed a similar case, and agreed with our holding in *Mitchell* that the 2015 amendments decriminalized the conduct for which Mitchell had been convicted and that the Legislature intended to apply those amendments retroactively to convictions pending on appeal. *Vandyke,* 485 S.W.3d at 510. The Beaumont Court concluded, however, that the Legislature's retroactive application of the amendments to cases that had already resulted in a conviction at trial functioned as the equivalent of a "pardon" and therefore "usurped" the Governor's clemency powers in violation of the separation of powers provision in the Texas Constitution. *Id.* at 511.

Both the State and Appellant agree with our reasoning in *Mitchell*, and that the Legislature's amendments did in fact decriminalize the conduct for which Appellant was convicted and that the Legislature intended the amendments to apply retroactively to Appellant's case because it was pending on appeal. The issue before us then is whether the Legislature violated the separation of powers provision in the Texas Constitution by having the amendments decriminalizing Appellant's conduct apply retroactively to Appellant because his conviction was pending on appeal when the amendments became effective.

### Standard of Review

We review whether a statute is constitutional de novo. *Salinas v. State,* 464 S.W.3d 363,

5

366 (Tex.Crim.App. 2015); *see also Fielding v. State*, 266 S.W.3d 627, 632 (Tex.App. – El Paso 2008, pet. ref'd). We begin with the presumption that the statute is valid and that the Legislature has not acted unreasonably or arbitrarily. *Ex parte Lo,* 424 S.W.3d 10, 14-15 (Tex.Crim.App. 2013); *see also Diaz v. State,* 68 S.W.3d 680, 683 (Tex.App. – El Paso 2000, pet. denied) (when reviewing the constitutionality of the statute, we begin our analysis with a presumption of validity). Therefore, the party attacking the statute typically bears the burden of establishing its unconstitutionality. *Ex parte Lo,* 424 S.W.3d at 15; *Fielding,* 266 S.W.3d at 632; *Diaz,* 68 S.W.3d at 684; *see also Martinez v. State,* 323 S.W.3d 493, 501-02 (Tex.Crim.App. 2010) (a court presumes that a law delegating authority to an agent of a governmental body is constitutional, and the party asserting a separation of powers violation must show that the Legislature's delegation is unlawful).

### Separation of Powers

The separation of powers provision in the Texas Constitution provides that: "The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." TEX. CONST. art. II, § 1. The separation of powers doctrine prohibits one branch of government from exercising a power "belonging inherently to another." *In re Dean,* 393 S.W.3d 741, 747 (Tex. 2012).

A separation of powers violation may occur in one of two ways. *See Martinez,* 323

6

S.W.3d at 501; *see also Vandyke*, 485 S.W.3d at 510. "First, it is violated when one branch of government assumes, or is delegated, *to whatever degree,* a power that is more 'properly attached' to another branch." *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex.Crim.App. 1990) (quoting *Ex parte Giles,* 502 S.W.2d 774, 780 (Tex.Crim.App. 1973) (emphasis in original)); *see also Martinez,* 323 S.W.3d at 501. The second occurs "when one branch unduly interferes with another branch so that the other branch cannot *effectively* exercise its constitutionally assigned powers." *Martinez*, 323 S.W.3d at 501 (quoting *Armadillo Bail Bonds*, 802 S.W.2d at 239 (emphasis in original)).

The application of these two tests is not always straightforward, as there is an overlap in the functioning of the three different branches of government. *See Texas Comm'n on Envtl. Quality v. Abbott,* 311 S.W.3d 663, 671–72 (Tex.App. – Austin 2010, pet. denied); *Armadillo Bail Bonds*, 802 S.W.2d at 239-40 (recognizing that the different branches of government have overlapping powers, thereby making it no "simple task" to determine when a legislative action violates the separation of powers provision). While the Constitutional provision on separation of powers "appears on its face to be rigid and absolute . . . such a construction would be impossible to implement in all cases because not every governmental power fits logically and clearly into any particular 'department.'" *Abbott*, 311 S.W.3d at 671 (quoting *Holmes v. Morales,* 906 S.W.2d 570, 573 (Tex.App. – Austin 1995), *rev'd in part on other grounds,* 924 S.W.2d 920 (Tex.1996)). Thus, Texas courts have never held that the three branches of government operate with absolute independence, and have instead "long held that some degree of interdependence and reciprocity is subsumed within the separation of powers principle." *Id.* at 672. Accordingly, the separation of powers doctrine "enjoins upon its branches separateness but interdependence, autonomy but

7

reciprocity." *Id.*

Courts thus traditionally take a "flexible approach" in determining whether a separation of powers violation has occurred, and will uphold "statutory provisions that to some degree commingle the functions of the Branches, but that pose no danger of either aggrandizement or encroachment." *Id.* at 671-72; *see also Armadillo Bail Bonds,* 802 S.W.2d at 239 ("The undue interference test 'takes the middle ground between those who would seek rigid compartmentalization and those who would find no separation of powers violation until one branch completely disrupted another branch's ability to function.'") (quoting N. McCabe, *Four Faces of State Constitutional Separation of Powers: Challenges to Speedy Trial and Speedy Disposition Provisions,* 62 Temple L.Rev. 177, 218 (1989)).

**The Constitutional Powers of the Legislative and Executive Branches**

Recognizing the potential for overlap in their constitutionally-assigned powers, we review the powers the Texas Constitution delegates to the legislative and executive branches.

The lawmaking power of the people is vested in our state Legislature by Article 3, Section 1 of the Texas Constitution. TEX. CONST. art. III, § 1 ("The Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas' "). "The power of the legislature includes the power to make, alter, and repeal laws, when such power is not expressly or impliedly forbidden by other provisions of the state Constitution." *Diaz,* 68 S.W.3d at 685 (citing *Walker v. Baker,* 145 Tex. 121, 196 S.W.2d 324, 328 (1946)). This power is considered to be plenary, and is "limited only by the express or clearly implied restrictions thereon contained in or necessarily arising from the Constitution." *Diaz,* 68 S.W.3d at 685. In particular, the Legislature possesses the sole authority

8

to establish criminal offenses and designate applicable penalties. *Martinez,* 323 S.W.3d at 501; *Matchett v. State,* 941 S.W.2d 922, 932 (Tex.Crim.App. 1996) (the authority to define crimes and prescribe penalties for those crimes is vested exclusively with the Legislature).

The Texas Constitution grants the executive branch the power of clemency in relevant part as follows: "In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction or successful completion of a term of deferred adjudication community supervision, on the written signed recommendation and advice of the Board of Pardons and Paroles,[5] or a majority thereof, to grant reprieves and commutations of punishment and pardons; and under such rules as the Legislature may prescribe[.]"[6] TEX. CONST. art. IV, § 11(b). Thus, the executive branch has the power "after conviction," to grant clemency to a defendant, which under the Texas Constitution is defined as "reprieves and commutations of punishment and pardons." *See Vandyke*, 485 S.W.3d at 510; *see also* TEX. CODE CRIM. PROC. ANN. art. 48.01 (West Supp. 2016). Importantly, the term "after conviction" has been interpreted to mean following the entry of a guilty verdict, and therefore the executive branch may extend an offer of clemency any time after a guilty verdict, including while a case is on appeal. *See Goss v. State,* 107 Tex.Crim. 659, 660–61, 298 S.W. 585, 585-86 (1927).

### The Legislature's Exercise of its Power to Repeal did not "Usurp" the Executive Branch's Power to Extend Clemency

---

[5] While the clemency power of the Governor is linked to the Board of Pardons and Paroles' recommendations, the power is still that of executive branch. *See R.R.E. v. Glenn*, 884 S.W.2d 189, 192 (Tex.App. – Fort Worth 1994, writ denied); *see also State ex rel. Smith v. Blackwell*, 500 S.W.2d 97, 101 (Tex.Crim.App. 1973) (while a limitation was placed upon the executive's power, the general scope of the power of clemency still rests with the Governor).

[6] The Legislature has adopted various statutes detailing the general procedures to be followed in clemency proceedings and has delegated to the executive branch (*i.e.*, the Board) the right to enact administrative rules governing those procedures as well. *See Graham v. State*, 643 S.W.2d 920, 934 (Tex.Crim.App. 1981) (Clinton, J. dissenting) (discussing Texas's constitutional and statutory scheme for granting clemency).

The Beaumont Court of Appeals determined that the Legislature's retroactive application of the Code amendments to cases pending on appeal violated the separation of powers doctrine because it "usurped" the executive branch's clemency powers. *Vandyke,* 485 S.W.3d at 511. In our view, the Legislature's actions in retroactively decriminalizing the conduct for which Appellant was convicted would have "usurped" the executive branch's powers only if it truly functioned as a grant of clemency. Thus, in order to determine whether the amendments "usurped" the executive branch's clemency powers, we must determine the meaning of the term "clemency," a question not addressed by the Court in *Vandyke.* In doing so, we look to the purpose and effect of the executive branch's constitutional clemency powers, as well as the Legislature's constitutional power to repeal a criminal statute.

### *The Purpose of Clemency*

The Texas Constitution provides the executive branch with the power to grant clemency to a defendant following conviction, and that clemency can take the form of either a reprieve, a commutation of a sentence, or a pardon. *Clifford v. Beto,* 464 F.2d 1191, 1194 (5th Cir. 1972) (recognizing in Texas that clemency can be extended in three different ways).

The concept of granting clemency arose in part during a period in history when there was no right to appeal from a criminal conviction, giving a wrongfully-convicted defendant his one and only chance at freedom. It has therefore been historically viewed as virtually the only "remedy for preventing miscarriages of justice where judicial process has been exhausted," making it the "fail safe" of our criminal justice system. *Herrera v. Collins,* 506 U.S. 390, 411–12, 415, 113 S.Ct. 853, 866, 868, 122 L.Ed.2d 203 (1993); *see also Harbison v. Bell,* 556 U.S. 180, 192-93, 129 S.Ct. 1481, 1490-91, 173 L.Ed.2d 347 (2009) (recognizing the historic role of clemency in

10

avoiding miscarriages of justice).   The Court of Criminal Appeals has long recognized clemency as an "act of grace" bestowed by the executive branch "which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime which he has committed."   *Ex parte Miers,* 124 Tex.Crim. 592, 596, 64 S.W.2d 778, 780 (1933) (quoting *Snodgrass v. State*, 67 Tex.Crim. 615, 623, 150 S.W. 162, 165 (1912)).

In contrast, the purpose behind the Legislature's power to repeal a penal code provision, without enacting a new provision in its place, is not meant to extend an "act of grace" to any particular defendant or class of defendants, or to avoid a miscarriage of justice.   Instead, that power stems directly from the Legislature's constitutionally-assigned power to determine what type of conduct should be considered a crime.   *See Ex parte Mangrum*, 564 S.W.2d 751, 753 (Tex.Crim.App. 1978) (when the Legislature repeals a penal code provision it has "indicated an intention that the conduct in question shall no longer be prosecuted as a crime"); *Mitchell*, 473 S.W.3d at 513 (recognizing that the Legislature's decision to decriminalize the act for which the appellant was convicted, stemmed from the Legislature's determination that it was no longer appropriate to inflict punishment on an individual for such conduct).   Thus, when the Legislature amends a penal code provision to decriminalize conduct, without substituting a new penal code provision in its place, it does so with the purpose of exercising its constitutionally-assigned power to determine what type of conduct should be deemed criminal in our society, a power that is not given to the executive branch, but is instead unique to the legislative branch.

Nevertheless, the exercise of that legislative power can, in some limited instances, violate the separation of powers.   In *Ex parte Giles,* 502 S.W.2d 774, 786 (Tex.Crim.App. 1973), the Court of Criminal Appeals concluded the Legislature improperly usurped the executive branch's

11

power to grant clemency when it expressly directed that new sentencing guidelines in the Texas Controlled Substances Act (which reduced the sentences that could be imposed on certain drug offenders) were to be applied retroactively to those defendants who had already been convicted and who had cases pending on appeal. In reaching this conclusion, the Court recognized that the Legislature has the constitutional power to enact new sentencing guidelines, but concluded that the retroactive application to convicted defendants functioned as "as a mere gift or a matter of clemency" to that class of defendants, because the retroactive application served to commute, or lower their sentences. The Court therefore concluded that the Legislature violated the separation of powers provision in the Texas Constitution in giving the act retroactive effect. *Id.* at 783, 786; *see also State ex rel. Smith v. Blackwell,* 500 S.W.2d 97, 103 (Tex.Crim.App. 1973) (similarly holding that the retroactive application of changes in sentencing laws for drug offenders "extends commutation to those previously convicted of certain offenses as a mere gift or a matter of clemency upon a filing of a resentencing petition").

In *Vandyke*, the Court relied on *Giles* when it concluded that the Legislature's retroactive application of its amendments repealing the penal provisions in the Health and Safety Code to convicted defendants with cases pending on appeal served this same purpose, that is as a grant of clemency to convicted defendants. *Vandyke*, 485 S.W.3d at 510. The Court, however, did not examine whether the retroactive application of the repeal did in fact function as a grant of clemency, as either a commutation of a sentence or as a pardon, which are the specific clemency powers exclusively delegated to the executive branch under the Texas Constitution.[7] TEX.

---

[7] The Texas Constitution also allows the executive branch to grant a reprieve to a convicted defendant. TEX. CONST. art. IV, § 11(b). The term "reprieve" has been defined as a temporary suspension of the execution of a sentence for an "interval of time." It does not defeat the ultimate execution of the judgment of the court but instead "merely delays it." *See Ex parte Black*, 123 Tex.Crim. 472, 475, 59 S.W.2d 828, 829 (1933); *see also Ex parte Bryant,* 155

CONST. art. IV, § 11(b).  We therefore direct our attention to that unexamined question to determine whether the Legislature's decision to retroactively apply the repeal of a penal provision to convictions pending on appeal specifically functions as either a commutation or a pardon.

### *The Retroactive Application of the Repeal*
### *did not Function as a Commutation*

The term "commutation" as used in the Texas Constitution "means the change of the punishment assessed to a less severe one." *Blackwell,* 500 S.W.2d at 103 (citing *Ex parte Lefors*, 165 Tex.Crim. 51, 303 S.W.2d 394 (1957)); *see also Hartfield v. Thaler,* 403 S.W.3d 234, 239 (Tex.Crim.App. 2013) ("The purpose of commutation is to reduce a sentence that was already imposed."); *Giles*, 502 S.W.2d at 783 (defining commutation as the "change of punishment assessed to a less severe one").  When the executive branch commutes a defendant's sentence, it does not affect the judgment of conviction, and instead leaves the judgment of conviction intact. *See, e.g., Whan v. State*, 485 S.W.2d 275, 277 (Tex.Crim.App. 1972) (the Governor's commutation of a defendant's sentence from death to life did not affect the judgment of conviction, and left the remaining portion of the defendant's case for the court to review).

Thus, numerous courts have concluded that when the Legislature retroactively applies resentencing guidelines to convictions that are pending on appeal, which limits or otherwise changes a defendant's sentence, the Legislature's action effectively usurps the Governor's power to commute a sentence.  For example, in *Giles* the Court considered the constitutionality of a provision in the Texas Controlled Substances Act, which provided for a change in the sentencing guidelines for certain drug offenses, and further provided that the new guidelines were to be made

---

Tex.Crim. 23, 25, 230 S.W.2d 824, 825 (1950) (discussing the Governor's right to issue temporary reprieves of defendant's prison sentence).  The State does not argue that the Legislature's retroactive application of the amendments could be considered a reprieve.

13

applicable to all pending criminal cases, including those convictions pending on appeal. *Giles,* 502 S.W.2d at 784. The Act gave a previously-convicted defendant the right to file a motion requesting that the trial court resentence him under the new guidelines, and upon the filing of such a motion, the trial court would have no discretion but to grant the motion. *Id.* at 780-81. The Court in *Giles* concluded that the Legislature's grant of this right effectively gave a defendant a reduction in sentence following his "conviction," which in turn amounted to a "commutation," *i.e.*, a "change of punishment assessed to a less severe one," a power that only the executive branch was allowed to exercise following conviction. *Id.* at 783-86; *see also Blackwell,* 500 S.W.2d at 102-04 (striking down another provision in the Texas Controlled Substances Act, which would have allowed a defendant to petition the court for a reduction in sentence after conviction, "whether he is presently serving a sentence, is on probation or parole, or has been discharged from the sentence," concluding that provision functioned as a "commutation" of the defendant's sentence, thereby violating the separation of powers provision); *State v. Flood*, 814 S.W.2d 548, 550 (Tex.App. – Houston [1st Dist.] 1991, no pet.) (concluding that a similar provision in the Texas Health and Safety Code allowing for resentencing of defendants convicted of marijuana offenses constituted a separation of powers violation, because "only the governor, not the legislature nor the judiciary, has the power of clemency under the Texas Constitution").[8]

Respectfully, we believe the Beaumont Court misplaced its reliance on *Giles* by reading it too broadly. *See Vandyke*, 485 S.W.3d at 510. In *Giles*, the Court was concerned only with

---

[8] We note a trial court has the authority to resentence a defendant after conviction, yet this power arises during the same time period when the Governor also has the power to commute a sentence. *See, e.g., State v. Davis,* 349 S.W.3d 535, 538 (Tex.Crim.App. 2011). In *Giles*, the Court acknowledged that the procedures set forth in the Controlled Substances Act arguably could have been viewed as a "resentencing," but determined that it was more akin to a commutation. *Giles*, 502 S.W.2d at 783.

14

whether the retroactive application of the new sentencing guidelines was the functional equivalent of a "commutation" of a sentence because both a commutation and a post-conviction resentencing have the exact same effect—a reduction in the defendant's sentence. In the present case, however, the Legislature's actions in repealing the penal provisions in the Health and Safety Code did not reduce the sentence imposed on a defendant who was convicted of violating his civil commitment requirements. Instead, the Legislature's actions effectively voided the judgments of conviction of those defendants who had cases pending on appeal at the time the new Act went into effect. We therefore cannot conclude that the Legislature's actions constituted the functional equivalent of a "commutation" of a defendant's sentence, as found in *Giles*.

### *The Retroactive Application of the Repeal did not Function as a Pardon*

In *Vandyke*, the Court recognized that *Giles* addressed only the question whether the Legislature's retroactive application of the new sentencing guidelines constituted an improper "commutation" of a defendant's sentence. 485 S.W.3d at 511. Yet, the Court concluded that the Legislature's decision to retroactively apply the Health and Safety Code amendments to convicted defendants served to "essentially pardon[] these individuals." *Id.* In reaching this conclusion, the Court in *Vandyke* did not discuss the distinction between "commutations" and "pardons." *Cf. Graham v. State,* 643 S.W.2d 920, 933 (Tex.Crim.App. 1981) (Clinton, J. dissenting) (recognizing the "functional distinction between a pardon and commutation"). But more importantly, the Court did not explain why the retroactive application of the repeal was the functional equivalent of a "pardon." Our review of the nature and function of a pardon leads us to conclude that it functions differently than the repeal of a penal statute, which undermines any conclusion that the Legislature usurped the executive branch's authority to grant a pardon when it

15

repealed the penal provisions in the Health and Safety Code and applied that change retroactively.

A "pardon" under the Texas Constitution is considered an "act of grace," which, much like the commutation of a sentence, merely exempts an "individual on whom it is bestowed from the punishment that has been assessed against him by the court[.]" *Ex parte Lefors,* 303 S.W.2d at 397. Despite earlier holdings to the contrary, it is now well-established that in Texas a pardon does not have any effect on the defendant's judgment of conviction. Instead, "the Governor's pardon forgives only the penalty, [because] he has no power to direct that the courts shall forget either the crime or the conviction," and therefore the pardon does not vitiate the conviction. *Watkins v. State,* 572 S.W.2d 339, 341 & n.4 (Tex.Crim.App. 1978); *see also Cuellar v. State*, 70 S.W.3d 815, 836 (Tex.Crim.App. 2002) (Keasler, J., dissenting) (recognizing that since "the very essence of a pardon is forgiveness . . . a pardon implies guilt; it does not obliterate the fact of the commission of the crime and the conviction"); *see also Jones v. State,* 141 Tex.Crim. 70, 147 S.W.2d 508, 510 (1941) (executive branch has no power to destroy a court's judgment). Because a pardon merely forgives the sentence and restores a defendant's civil rights, it does not free the defendant from the other collateral consequences of having a judgment of conviction on his record. *See Runo v. State,* 556 S.W.2d 808, 809 (Tex.Crim.App. 1977); *Watkins*, 572 S.W.2d at 341-42 (a pardon "merely serves to restore [a defendant's] civil rights").

Despite a pardon, the judgment of conviction remains, and in most instances, the pardoned defendant will still suffer virtually all of the collateral consequences that an unpardoned defendant does in any future criminal proceeding. *See, e.g., Taylor v. State,* 612 S.W.2d 566, 572 (Tex.Crim.App. 1981) (using conviction to deny probation despite pardon); *Watkins,* 572 S.W.2d at 341 (same); *Gaffney v. State*, 575 S.W.2d 537, 541 (Tex.Crim.App. 1978) (allowing use of

16

conviction for enhancement in subsequent proceeding despite pardon); *Logan v. State*, 448 S.W.2d 462, 463-64 (Tex.Crim.App. 1969) (same); *Runo,* 556 S.W.2d at 809 (allowing a conviction to be used to deny bail in a subsequent proceeding despite pardon).[9]

Even when a pardon is granted based on actual innocence, the judgment of conviction remains intact, unless and until a court expunges the judgment at the defendant's request. *See* TEX. CODE CRIM. PROC. ANN. art. 55.01(a)(1)(B) (West Supp. 2016) (providing that defendant who has been "pardoned or otherwise granted relief on the basis of actual innocence" is entitled to have his records and files relating to the arrest expunged).

In contrast, the Legislature's action in retroactively repealing a penal code provision does not serve to merely "forgive" a defendant's sentence and restore his civil rights, but instead has the effect of completely voiding a defendant's judgment of conviction. This concept is illustrated in a number of cases in Texas, dating back to the common law as it existed over a century ago, where, in the absence of an effective savings provision, it was well-established that the Legislature's repeal of a criminal statute operated to bar all "prosecutions" for earlier violations of the statute whether the prosecution was pending or had not yet begun at the time of the repeal. *Ex parte Mangrum*, 564 S.W.2d at 753. In turn, Texas long ago adopted the common law rule that a "prosecution" was still "pending" while the defendant's conviction was on appeal, meaning that when the Legislature repealed a penal code provision while a defendant's conviction was pending on appeal, the conviction was to be reversed, because there was no longer a crime to prosecute.[10]

---

[9] In addition to the traditional pardon, a defendant in Texas may also petition the Board of Pardons and Paroles for a pardon based on "actual innocence." 37 TEX. ADMIN. CODE § 143.2. Various courts have indicated that there may be a distinction between general pardons granted as an "act of grace," and those granted based on "proof of innocence," which may save a defendant from these collateral consequences. *See, e.g., Runo,* 556 S.W.2d at 809; *Gaffney,* 575 S.W.2d at 541; *Watkins,* 572 S.W.2d at 341–42.

[10] In *Mangrum*, the Court cited several cases for this proposition, dating back to 1857. 564 S.W.2d at 753–54; s*ee,*

*Id.*; *Mendoza v. State,* 460 S.W.2d 145, 147 (Tex.Crim.App. 1970) (a prosecution is considered pending while the case is on appeal; therefore, if a statute is repealed while the case is on appeal, no punishment can be inflicted and the defendant's conviction must be reversed). This common law rule was based on the theory that the Legislature by its repeal had indicated that the conduct for which the defendant had been convicted was no longer to be "prosecuted as a crime," thereby absolving him of any wrongdoing. *Mangrum,* 564 S.W.2d at 753.

As an example of how this rule operated, we look to *Williams v. State,* 476 S.W.2d 307 (Tex.Crim.App. 1972), where two defendants had been convicted of the offense of "operating an open saloon." After the defendants were convicted, and while their case was pending on appeal, the Legislature amended the Texas Penal Code, decriminalizing the conduct for which the defendants were convicted, without substituting any similar penal code provision in its place. *Id.* at 308-09. The Legislature, however, did not include a savings provision delineating the class of cases to which the repeal was to apply. The Court of Criminal Appeals therefore applied the common law rule in effect at that time, which required it to apply the Legislature's repeal retroactively to all pending cases, including those pending on appeal. In reaching this conclusion, the Court noted that the defendants' cases were still being "prosecuted" in the judicial system while they were pending on appeal, and therefore, their convictions were not yet final. *Id.* at 309. In light of the Legislature's repeal, the Court concluded that there was "no longer a basis for prosecution," and that it was therefore required to reverse the defendants' convictions. *Id.*; *see also Perez v. State*, 480 S.W.2d 687, 688 (Tex.Crim.App. 1972) (similarly holding that repeal of "open salon" offense after prosecution began was to be applied retroactively on appeal to

---

*e.g., Wall v. State*, 18 Tex. 682, 683 (1857) (recognizing that "if the law which created the offense is repealed, after the repealing law takes effect, no further proceeding can be taken under the repealed law to enforce the punishment," and that this principle is to "apply as well to the proceeding upon the appeal in the appellate court").

defendant's pending prosecution); *Volney v. State,* 91 Tex.Crim. 238, 238–39, 238 S.W. 220, 221 (1922) (reversing defendant's conviction for "unlawful possession of equipment for the manufacture of intoxicating liquor" where the offense upon which he was convicted was repealed while his case was pending on appeal); *Kenyon v. State,* 31 Tex.Crim. 13, 14, 23 S.W. 191, 191 (1892) (finding a defendant's conviction for the criminal offense of "usury" was void where the Legislature repealed the Penal Code provision making usury a crime while the defendant's conviction was pending on appeal, as there was thereafter no law in effect punishing usury as an offense).

We acknowledge that most states including Texas have since modified the common law rule, and have enacted so-called savings acts, which alter this rule. In Texas, the general savings provision is currently found in Section 311.031 of the Texas Government Code, which provides that an amendment or repeal of a statute does not affect "any violation of the statute or any penalty, forfeiture, or punishment incurred under the statute before its amendment or repeal[.]" TEX. GOV'T CODE ANN. § 311.031(a)(3) (West 2013). But, the Texas Court of Criminal Appeals has recognized that this general savings provision is to be disregarded when the Legislature has enacted a more specific savings provision when repealing or amending a statute. *See Mangrum,* 564 S.W.2d at 755 (general savings clause is inapplicable when the Legislature has provided a "specific savings clause" in amending the Penal Code). And, in the present case, the 2015 Act included a specific "savings provision," in which, as discussed, the Legislature knowingly used the term "final conviction" with the intent to have the amendments apply retroactively to cases that were still pending on appeal. *See Mitchell,* 473 S.W.3d at 517.

We believe that all of the above cases—which allow for the retroactive application of

legislation decriminalizing conduct to cases pending on appeal—can be reconciled with the Constitution's grant of the power to pardon to the executive branch, because the retroactive repeal of a penal code provision does not function in the same way as either a "commutation" or "pardon," and has different and distinct effects on a defendant's case. *See Giles*, 502 S.W.2d at 783 (looking to the "effects" of a legislative act in determining whether it may be considered the equivalent of "clemency"). As explained above, a pardon only relieves the defendant of his previously-imposed punishment and restores his civil rights, without having any effect on the judgment of conviction. In contrast, the retroactive repeal of a penal code provision voids a defendant's judgment of conviction—something that the executive branch is powerless to do. It is this difference that distinguishes the present case from *Giles*. In *Giles*, the Legislature's actions in allowing a defendant to be resentenced following conviction had only one effect—to reduce the defendant's sentence—which had the exact same effect as the executive branch's commutation of a sentence. *Giles*, 502 S.W.2d at 782-83. That identical effect does not exist here.

We believe that because granting clemency and decriminalizing conduct are distinct and unique powers, which have been constitutionally-granted to the different branches of government, the mere fact that these two branches of government are entitled to exercise their powers at the *same time*—*i.e.*, the period after a defendant is convicted but before his conviction is finalized on appeal—does not mean that the powers should be viewed as being of the *same nature*. In fact, as explored below in more detail, during this same time period, all three branches of government are allowed to take separate and distinct actions that may affect a defendant's conviction, each acting within the scope of their constitutionally-assigned powers. Despite the overlap in timing, each may generally exercise their own unique powers without interfering with each other's operations.

20

Accordingly, in the present case, we conclude that the Legislature's exercise of its constitutionally-granted authority to repeal a penal statute and to apply that repeal retroactively to cases pending on appeal, did not "usurp" the executive branch's constitutionally-granted authority to extend an offer of a clemency to a convicted defendant.

## The Legislature's Exercise of its Power to Repeal did not
## Unduly Interfere with the Executive Branch's Operations

We next address the related question whether the Legislature's decision to retroactively apply the amendments to cases pending on appeal unduly interferes with the executive branch's operations.[11] To determine whether a statute has violated the separation of powers doctrine on this basis, we must consider the impact of the statute on the executive branch's exercise of its constitutionally-assigned powers. *See Armadillo Bail Bonds,* 802 S.W.2d at 239; *see also Abbott,* 311 S.W.3d at 671-72. It is only when the functioning of one branch "in a field constitutionally committed" to that branch is interfered with by another branch that a constitutional problem arises. *See Dean*, 393 S.W.3d at 747-48. In making our determination, we must keep in mind that "statutory provisions that to some degree commingle the functions of the Branches, but that pose no danger of either aggrandizement or encroachment" must be upheld, *Abbott*, 311 S.W.3d at 672, and that the undue interference test "takes the middle ground between those who would seek rigid compartmentalization and those who would find no separation of powers violation until one branch completely disrupted another branch's ability to function." *Armadillo Bail Bonds,* 802 S.W.2d at 239.

As noted above, the Texas Constitution gives the executive branch the power "after

---

[11] In *Vandyke*, the Court based its decision solely on its conclusion that the Legislature's retroactive application of the Code amendments to cases pending on appeal usurped the Governor's clemency power. 485 S.W.3d at 511. The court therefore did not reach the question whether the Legislature's actions "unduly interfered" with the operations of the executive branch.

conviction,"—rather than "after final conviction"—to grant "reprieves and commutations of punishment and pardons[.]"  TEX. CONST. art. IV, § 11(b).  The Constitution's use of the term "after conviction" has long been construed to mean that the executive branch has the authority to grant clemency virtually any time after a verdict of guilt has been entered, even while the case is awaiting sentencing in the trial court, as well as while the case is pending on appeal.  *See Goss,* 298 S.W. at 585 (the term "conviction" as used in the Constitution gives the executive branch the power to issue clemency after a verdict is entered, even if an appeal is pending); *see also Whan*, 485 S.W.2d at 277 (the executive branch has the authority to grant a commutation of a sentence following a verdict and the assessment of a sentence, even before the sentence was formally pronounced or before a judgment of conviction has actually been entered); *Ex parte Giles*, 502 S.W.2d at 784 (construing the term, "after conviction'" as used in the Constitution to mean the verdict of conviction); *Duke v. State,* 106 Tex.Crim. 154, 155, 291 S.W. 539, 540 (1927) (upholding a grant of clemency that was extended while a case was pending on appeal).

Significantly, this means the executive branch's clemency power arises when a case is still making its way through the judicial system.  Consequently, at the same time that the executive branch may extend an offer of clemency to a convicted defendant, so too may the judicial branch take a multitude of actions in a criminal case.  We must conclude from this that our Constitution contemplated that these two branches would work in a coordinated and cooperative manner during this time period when both branches have jurisdiction to take action in a convicted defendant's criminal case.[12]

---

[12] We note that this period of overlapping authority does not exist in the federal system where clemency arises only *after* all judicial proceedings have been exhausted, including direct appeals.  *See, e.g., Brown v. Stephens*, 762 F.3d 454, 460 (5th Cir. 2014*), cert. denied*, 135 S.Ct. 1733, 191 L.Ed.2d 701 (2015); *see also Herrera,* 506 U.S. at 412, 113 S.Ct. at 866 (clemency is the "historic remedy for preventing miscarriages of justice where judicial process has been

The concept that the two branches must, and should, work together during this critical time period is illustrated in a variety of ways. For example, the Texas Constitution gives courts the "power, after conviction, to suspend the imposition or execution of sentence and to place the defendant upon probation and to reimpose such sentence, under such conditions as the Legislature may prescribe." TEX. CONST. art. IV, § 11A. In effect, this provision gives authority to the judicial branch to offer "a limited grant of clemency" to a defendant during the exact same time period when the executive branch may extend an offer of clemency to a defendant as well. *See Blackwell,* 500 S.W.2d at 101 ("This section of the Constitution is a *limited grant of clemency* to the courts by the people and does not encompass the general authority to grant commutation and pardons."); *see also Speth v. State,* 6 S.W.3d 530, 532-33 (Tex.Crim.App. 1999) (this provision in the constitution is considered "clemency"); *McNew v. State,* 608 S.W.2d 166, 170 (Tex.Crim.App. 1978) (recognizing that the constitutional provision is a "limited grant of clemency to the courts by the people").

In addition to this constitutional grant of power to modify a defendant's sentence, the Court of Criminal Appeals has also long recognized that a trial court has a separate, non-constitutional right to modify a convicted defendant's sentence following conviction. In particular, the Court has repeatedly held that a trial court has "plenary power to modify its sentence if a motion for new trial is filed within 30 days of sentencing." *See, e.g., Davis,* 349 S.W.3d at 537 (citing *State v. Aguilera,* 165 S.W.3d 695, 697-98 (Tex. Crim. App. 2005)). This power to modify a sentences also arises during the same time period when the executive branch has the right to extend an offer of clemency. Yet at least one court has determined that, although a trial court's modification of a

exhausted").

23

defendant's sentence following conviction may effectively serve as a "commutation" of a convicted defendant's sentence, the court's modification of the sentence did not violate the separation of powers provision in the Constitution, as it "no way affected the Governor's ability to commute or pardon [the defendant's] sentence[]." *See, e.g., Patterson v. State*, 353 S.W.3d 203, 215 (Tex.App. – San Antonio 2011, pet. ref'd).

In addition to reducing a defendant's sentence following conviction, the judicial branch may also grant a defendant a new trial, and while there must be some legal error, the court may even do so for very reasons strikingly similar to the reasons the executive branch may extend an offer of clemency, *i.e.*, to avoid a "miscarriage of justice." *State v. Herndon*, 215 S.W.3d 901, 907 (Tex.Crim.App. 2007) (a new trial may be granted based on errors that occurred at trial, which would "not inevitably require reversal on appeal," but which may nevertheless result in a "a miscarriage of justice").

Moreover, in Texas, our clemency procedures allow a defendant to petition the Board of Pardons and Paroles for a pardon on the ground of "actual innocence." 37 TEX. ADMIN. CODE § 143.2 (Bd. of Pardons and Paroles, Pardons for Innocence); *see also Herrera,* 506 U.S. at 416, 113 S.Ct. at 868-69 (discussing Texas procedure for petitioning for clemency on basis of actual innocence). Yet, so too may a defendant raise a claim of actual innocence in various post-conviction proceedings in our judicial system, by bringing a motion for new trial or by bringing a post-conviction petition for habeas corpus claiming actual innocence. *Herrera,* 506 U.S. at 416, 113 S.Ct. at 868; *Ex parte Tuley,* 109 S.W.3d 388, 390 (Tex.Crim.App. 2002) (recognizing a defendant's right to raise an "actual innocence claim" in a collateral attack on a conviction in our judicial system, as well as by bringing a petition for a full pardon on that basis).

Further, the judicial branch has the power to determine that a Penal Code offense is unconstitutional and that a defendant's conviction is therefore void, and then is required to apply its newly-announced determination of unconstitutionality retroactively to convictions that have long ago been finalized. *See, e.g., Ex parte Scott*, 455 S.W.2d 244, 245 (Tex.Crim.App. 1970) (granting habeas petition and discharging defendant from custody where the penal code provision under which he was convicted was later determined to be unconstitutional); *Rivera v. State,* 363 S.W.3d 660, 666 (Tex.App. – Houston [1st Dist.] 2011, no pet.) (recognizing that a pretrial petition for a writ of habeas corpus could be used to void a defendant's conviction if the statute under which he was convicted was determined to be unconstitutional on its face); *see also Welch v. United States,* __U.S.__, 136 S.Ct. 1257, 1263, 194 L.Ed.2d 387 (2016) (recognizing that a newly-announced substantive rule that rendered a definition found in a penal code provision to be unconstitutionally vague has a "retroactive effect in cases on collateral review"); *Montgomery v. Louisiana,* __ U.S. ___, 136 S.Ct. 718, 729–30, 193 L.Ed.2d 599 (2016) (discussing a defendant's right to collateral review of a conviction that is based on a penal code provision later deemed to be unconstitutional, *i.e.*, where the conduct for which the defendant was convicted is later determined to be "constitutionally immune from punishment").

Thus, in Texas, the judicial branch is assigned the power to take action in a convicted defendant's case following the entry of a verdict in a multitude of ways, some of which mimic the executive branch's power to commute a sentence, and at the same time the executive branch is given the power to extend an offer of clemency to a convicted defendant. Yet, despite that these two branches may exercise their authority coextensively during the same time period, we find no authority that would lead us to conclude that exercise of its powers by one branch during this time

25

period creates an "undue interference" with the other branch's operations. In fact, the Texas Court of Criminal Appeals appears to recognize that this overlapping authority over a criminal defendant's case effectively creates a race to determine which branch finishes first in providing relief to a defendant—without any apparent concern that by exercising its powers first, one branch might interfere with the other branch's power. *See, e.g., Hartfield,* 403 S.W.3d at 239 (Governor has no authority to commute a defendant's death sentence after the defendant's conviction had already been reversed and the appellate court has issued its mandate, because there was no longer a death sentence to commute); *Graham,* 643 S.W.2d at 925 (op. on rehearing) (where Governor signed a proclamation commuting defendant's death sentence to life imprisonment, court concluded that any errors in the punishment phase of the trial had been rendered "harmless" and therefore only considered the alleged errors occurring in the guilt phase of the trial); s*ee also Goss*, 298 S.W. at 586 ("The issuance of the clemency proclamation and the acceptance thereof by the accused precludes the prosecution of an appeal from the judgment.").

If the judicial branch and the executive branch are able to co-extensively exercise their constitutionally-granted powers over a convicted defendant's case during the same time period without interfering with each other's operations, we see no logical reason to conclude that the legislative branch's exercise of its own unique constitutionally-assigned power to repeal a penal code provision and apply it retroactively to cases pending on appeal would interfere with the operations of the executive branch during this same time period. Instead, we conclude that the unique power given to the Legislature to define what is a crime and to apply that change retroactively to cases pending on appeal does not unduly interfere with the executive branch's exercise of its power of clemency, even though those powers can be exercised during the same

26

time period and even though the exercise of those powers may both affect a defendant's case, albeit in different ways.

In sum, we conclude that the Legislature did not usurp or unduly interfere with the clemency power of the executive branch, and thus did not violate the separation of powers provision in the Texas Constitution, when it directed that the amendments decriminalizing Appellant's conduct be applied retroactively to Appellant's case even though it was pending on appeal. Accordingly, under our holding in *Mitchell*, we conclude Appellant is entitled to reversal of the trial court's judgment of conviction and to dismissal of the charges against him.

## CONCLUSION

We reverse the trial court's judgment and render judgment dismissing the indictment against Appellant.[13]

STEVEN L. HUGHES, Justice

November 16, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Publish)

---

[13] As we did in *Mitchell*, we assume the trial court with jurisdiction over Appellant's civil commitment will act forthwith to re-implement Appellant's existing civil commitment order or to modify that order to comply with the requirements as set forth in Chapter 841 to the extent it deems necessary. *See Mitchell,* 473 S.W.3d at 518 n.16.