

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00006-CR

---

BRIAN MCBEATH, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. DC-2022-CR-0455, Honorable William R. Eichman II, Presiding

---

December 8, 2023

## OPINION

BEFORE QUINN, C.J., and DOSS and YARBROUGH, JJ.

Brian McBeath complains of the sentence levied after pleading guilty to engaging in deadly conduct. Allegedly, the trial court erred in admitting evidence of circumstances surrounding an earlier criminal conviction for which appellant was later granted "judicial clemency." He received the latter under article 42A.701(f) of the Texas Code of Criminal Procedure after he performed a portion of his community supervision. That clemency persisted despite having again engaged in criminality, according to appellant. And, in so persisting, it supposedly barred the trial court from admitting most evidence relating to his

commission of the earlier offense. The sole admissible evidence was proof of the conviction itself, the argument goes. Yet, the trial court purportedly erred when exceeding that limitation by permitting the State to "introduce[] evidence about the facts of Mr. McBeath's prior conviction . . . ." Moreover, appellant asks that we "reverse and remand his case to the district court for further proceedings . . . ." Though the nature of those "further proceedings" go unmentioned, we presume them to be a new sentencing hearing and, instead, affirm.

### *Background*

The deadly conduct underlying his current conviction occurred at 2:00 a.m. while leaving a local strip club. He and his wife attended the establishment that evening. As the 2:00 a.m. hour approached, appellant exited the facility and attempted to re-enter. His effort was initially thwarted by a security guard. Yet, the guard relented, at which point appellant entered and obtained his wife. The two then exited and walked to a truck located in the adjacent parking lot.

With headlights off, appellant slowly drove the truck through the parking lot as other patrons exited and security guards meandered outside by the front door. As he did, he drew a firearm, aimed in the direction of the building, patrons, and guards, and fired. A video camera captured this and his departure from the scene. Only one person suffered injury, that being appellant's wife. The return fire from a security guard apparently struck her.

### *Disposition*

Article 42A.701(f) states, in pertinent part:

(f) If the judge discharges the defendant under this article, the judge may set aside the verdict or permit the defendant to withdraw the defendant's

2

plea. A judge acting under this subsection shall dismiss the accusation, complaint, information, or indictment against the defendant. A defendant who receives a discharge and dismissal under this subsection is released from all penalties and disabilities resulting from the offense of which the defendant has been convicted or to which the defendant has pleaded guilty, except that:

(1) proof of the conviction or plea of guilty shall be made known to the judge if the defendant is convicted of any subsequent offense . . . .

The "judicial clemency" alluded to earlier emanates from the passage "is released from all penalties and disabilities resulting from the offense . . . ." Yet, one readily sees from the statute that being so released has its limitations should the individual reoffend.

Being convicted for a subsequent crime "nullifies [the] determination" to earlier grant "judicial clemency." *Yazdchi v. State*, 428 S.W.3d 831, 840 (Tex. Crim. App. 2014) (interpreting the identically worded predecessor to article 42A.701(f)(1)). It "resurrect[s] the conviction that had been wiped away . . ." at least for the purpose of determining eligibility for probation. *Id.* at 843 (stating that the earlier discharge "is treated as a conviction for the limited purpose of probation ineligibility upon subsequent conviction for another offense"). *Id.* Simply put, one granted the opportunity to be free from "penalties and disabilities" is not exonerated. *Id.* He remains convicted, which conviction has its effect on one's eligibility for probation, at the very least.

Yet, appellant would have us reduce the shield of clemency merely to exclude from its protection evidence of the prior conviction's existence. Other insulation from penalties and disabilities remain in place, in his view. And, because they supposedly do, a trial

3

court may not admit evidence of circumstances surrounding the earlier conviction, such as other bad acts.[1]

In arriving at his conclusion, though, he fails to address what is meant by "penalties and disabilities resulting from the offense." Nor does he explain how admitting details underlying the earlier crime falls within the realm of such "penalties and disabilities," as contemplated by the legislature. One would normally think that a penalty or disability arising from the commission of a criminal offense would be something akin to the loss of the right to vote, *Rodriguez v. State*, 93 S.W.3d 60, 72 (Tex. Crim. App. 2002), sit on a jury, *Mitschke v. State*, 129 S.W.3d 130, 135 (Tex. Crim. App. 2004), carry a firearm, *Moliere v. State*, 574 S.W.3d 21, 26 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd), or maintain a type of licensure. *Rodriguez*, 93 S.W.3d at 72. Those come under the commonly understood definition of "penalty," which connotes some punishment, sanction, or fine, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/penalty (last visited December 6, 2023), or "disability" which implies some type of restriction or disqualification. *Id.* at https://www.merriam-webster.com/dictionary/disability (last visited on December 6, 2023). Moreover, this view of the words comports with the historic notion of clemency, which entails exemption or freedom from punishment for a crime committed. *See Martinez v. State*, 503 S.W.3d 728, 736 (Tex. App.—El Paso 2016, pet. ref'd) (quoting *Ex parte Miers*, 64 S.W.2d 778 (Tex. Crim. App. 1933)) (observing that the Court of Criminal Appeals "has long recognized clemency as an 'act of grace' bestowed by the executive branch 'which exempts the

---

[1] The other bad acts at bar included appellant's operation of an illicit marijuana farm and the profits garnered therefrom.

4

individual on whom it is bestowed from the punishment the law inflicts for a crime which he has committed'"). Is the ability to later consider bad facts proving an earlier conviction within that ilk? Appellant apparently assumes so but fails to explain why or cite authority illustrating it is. Despite this omission, we nonetheless answer our own question, and that answer is no.

First, the statute focuses on the conviction and the effect receiving judicial clemency has upon it. Nothing is said about the facts or other bad acts underlying or surrounding that conviction. Nothing within it expressly prohibits their consideration under provisions like article 37.07 of the Code of Criminal Procedure. Indeed, the latter expressly permits a trial court to factor into a later punishment equation bad acts, irrespective of whether they resulted in some conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (stating that either the State or defendant may offer evidence as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and any other evidence of an extraneous crime or bad act shown to have occurred beyond a reasonable doubt irrespective of whether the defendant has been finally convicted of it). And, most importantly, article 37.07, § 3(a)(1), being a statute that addresses the specific topic of admitting evidence (including prior bad acts) relevant to the assessment of some later punishment, supplants whatever general reference article 42A.701 may have regarding the same topic. *See Ex parte Dotson*, 76 S.W.3d 393, 395 (Tex. Crim. App. 2002) (a statute specifically addressing a particular matter controls over a statute which may generally touch upon the same topic).

5

Secondly, judicial clemency under article 42A.701 does not exonerate the defendant. *Yazdchi, supra.* It does not wipe away the occurrence of bad acts resulting in the conviction. Like when records are expunged, those bad acts underlying a conviction continue to exist and remain relevant in judicial proceedings under certain circumstances. *Doty v. State*, No. 03-03-00668-CR, 2005 Tex. App. LEXIS 3994, at *15-16 (Tex. App.—Austin May 26, 2005, pet. dism'd as improvidently granted) (mem. op., not designated for publication) (noting that it was not error to permit two witnesses to testify about facts relating to an expunged offense when they did so from their memories as opposed to reviewing the expunged records); *Bustamante v. Bexar County Sheriff's Civil Serv. Comm'n*, 27 S.W.3d 50, 54 (Tex. App.—San Antonio 2000, pet. denied) (same involving personal observations). And, again, appellant directed us to no authority holding otherwise, that is, authority viewing clemency as insulating earlier bad acts from consideration for purposes unrelated to the earlier conviction.

Third, we return to our earlier discussion about the meaning of "penalties" and "disabilities" imposed due to commission of the offense. Those terms are not defined within article 42A.701. Thus, we assign them their common meaning, *Clark v. State*, 190 S.W.3d 59, 64 (Tex. App.—Amarillo Oct. 19, 2005, no pet.) (so stating), and above provide examples of them. The ability to admit evidence of relevant prior bad acts under article 37.07, § 3 of the Code of Criminal Procedure hardly falls within the realm of restrictions, punishment, disqualifications, sanctions or the like suffered by the accused as a result of a prior conviction. The defendant is not suffering a loss or impediment to some right or privilege **because of the prior offense** when 37.07, § 3 is utilized as a

6

means to inform a subsequent punishment decision. So, clemency is not relieving him of any loss, assuming clemency remains in place once the individual reoffends.

In sum, we reject appellant's invitation to read into article 42A.701(f)(1) restrictions our legislature left out.

One other matter warrants comment. It concerns the topic of harm. When purportedly non-constitutional error occurs, reversal is appropriate when the mistake had a substantial and injurious effect or influence on the outcome. *Woodall v. State*, Nos. 07-21-00217-CR, 07-21-00218-CR, 2022 Tex. App. LEXIS 4693, at *6 (Tex. App.—Amarillo July 8, 2022, no pet.) (mem. op., not designated for publication) (holding that one suffers harm for non-constitutional error when a court concludes the error had a substantial and injurious effect or influence on the outcome of the proceeding). In other words, we endeavor to "calculate as much as possible the probable impact of the error," *Motilla v. State*, 78 S.W.3d 352, 356 (Tex. Crim. App. 2002), by considering a myriad of non-exclusive factors. *Salley v. State*, No. 07-20-00180-CR, 2021 Tex. App. 7723, at *28-29 (Tex. App.—Amarillo Sept. 20, 2021, pet ref'd) (mem. op., not designated for publication). We see no reason not to add one particularly important item to the list that actually answers the probable impact question.

That factor comes from an old familiar tune penned by Mr. McCartney: "[s]o won't you listen to what the man said . . . he said":[2]

> I've gone through all of the exhibits and, quite frankly, the surveillance video strikes me the most of anything here. That and your attitude at times.
>
> Here, you're pointing at those guys, at the security guard and the bouncer. You're driving up with your lights off. And if you can see the security guard

---

[2] "Listen to What the Man Said," Paul McCartney.

and the bouncer, they are—they are not in any threatening position. They're standing there, hands at the side.

Same here when you're about to open fire. And then they're turning their backs.

This was a drive-by shooting, quite frankly. Your wife suffered some pretty significant injuries, and it was on you. And you're the reason she suffered those injuries.

Clearly, you have a temper. Clearly, based on some of the things you said, at least according to other witnesses that night, you have a sense of entitlement, unfortunately.

But this was premeditated. You turned your lights off, drove up and fired the shots.

First, you didn't tell the whole story about the events to the officers. You didn't have to. And it was probably smart that you invoked your right to an attorney when you did.

But you were so fortunate you didn't harm someone seriously or kill someone.

And there are various reasons for punishment. One is to punish for the act, and I have to do that in this case. And I know you're a good family man by all accounts. A good dad. A good worker. But this act that you did does not deserve probation.

And so I'm sentencing you to 5 years' confinement in the Texas Department of Criminal Justice because I think that's the appropriate sentence based on the acts of that night when taken into account everything.

I can't treat you differently than I would anybody else. And I'm not going to.

The "man" uttering these words was the trial judge. His comments not only speak volumes but also lead us to one clear end.

Despite the hoopla voiced by the parties, the evidence about which appellant complained had no substantial or injurious effect or influence on the outcome. The trial court sentenced appellant to prison not because of his earlier money laundering conviction and drug dealings related thereto. What he did leaving the strip club, how he

8

then acted, his then sense of entitlement, whom he endangered at that time, and how he then caused injury to his wife served as the catalyst for and reason behind his imprisonment. "That's what the man said . . . listen to what the man said." We do so here and find ourselves with a fair assurance that the error did not influence the outcome or had but only a slight effect. *See Motilla,* 78 S.W.3d at 355 (noting this to be the ultimate test). So, even if we were to assume the trial court erred in the manner attributed by appellant, the latter suffered no harm.

We affirm the judgment of the trial court.


Brian Quinn
Chief Justice


Publish.